UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| H-D U.S.A., LLC, | |
| Plaintiff, | Case No. 16-cv-10096 |
| v. | |
| GUANGZHOU TOMAS CRAFTS CO., LIMITED, *et al.*, | Judge John Robert Blakey |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Harley-Davidson moved for summary judgment against the Defendant identified by and operating the eBay store bg27cyf for alleged trademark infringement. [99]. Plaintiff seeks at least $150,000 in statutory damages, a permanent injunction prohibiting Defendant from selling and offering for sale counterfeit Harley-Davidson products, and an award of reasonable attorney fees and costs pursuant to 15 U.S.C. § 1117. *Id.* For the reasons explained below, this Court grants summary judgment to Plaintiff, awards Plaintiff $150,000 in statutory damages, enters a permanent injunction against Defendant, and awards reasonable attorney fees and costs to Plaintiff.

This opinion also addresses three other motions: Defendant's motion to lift the asset freeze that this Court entered in November 2016 [111]; Plaintiff's motion to compel discovery and/or strike Defendant's motion to lift the asset freeze [132]; and Defendant's motion to strike one of Plaintiff's declarations [143]. For the

reasons explained below, this Court denies Defendant's motion to lift the asset freeze, denies Plaintiff's motion to compel and/or strike as moot, and denies Defendant's motion to strike as moot.

I.  Background[1]

    A.  Local Rule 56.1 and Evidentiary Rules

Throughout Defendant's response to Plaintiff's statement of facts, Defendant denies facts by responding with legal arguments and conclusions. *See, e.g.*, [116] at 3. Similarly, Defendant's statement of additional facts contains conclusory legal arguments. *See, e.g.*, *id.* at 5 ("A reasonable purchaser would realize that one could not expect to receive legitimate Harley-Davidson front axle nut cover caps for $12.13 price [sic] charged by Defendant."). Legal arguments and conclusions do not belong in Local Rule 56.1 statements. *See Phillips v. Quality Terminal Servs., LLC*, 855 F. Supp. 2d 764, 771 (N.D. Ill. 2012) ("Including legal arguments in a 56.1 statement is wholly improper, redundant, unpersuasive, and irksome; in short, it advances neither the interests of the parties nor of the court."). Thus, this Court does not consider the improper "facts" in Defendant's statement, and this Court deems admitted any of Plaintiff's facts that Defendant denies improperly.

Along with improper legal arguments, Defendant also seeks to support its statement of facts with an undated declaration from bg27cyf's manager. [117]. Declarations may substitute for affidavits and constitute evidence *if* they comply with the requirements of 27 U.S.C. § 1746. *Sheikh v. Grant Reg'l Health Ctr.*, 769

---

[1] The following facts come from Plaintiff's Local Rule 56.1 statement of facts [101] and Defendant's Local Rule 56.1 statement of additional facts [116].

F.3d 549, 551 (7th Cir. 2014). Section 1746 requires a dated signature. Accordingly, this Court does not consider the undated declaration as evidence. *See Rivera v. Allstate Ins. Co.*, 140 F. Supp. 3d 722, 729 (N.D. Ill. 2015).

**B. Facts**

Plaintiff holds a federal trademark registration for the Harley-Davidson "Bar & Shield Logo." [101] ¶ 1. The Bar & Shield Logo registration has incontestable status under 15 U.S.C. § 1065. *Id.*

Defendant advertised, offered for sale, and sold—through the eBay store identified as bg27cyf—motorcycle axle nut covers featuring counterfeit versions of the Bar & Shield Logo. *Id.* ¶ 2. Defendant advertised and sold products to consumers in the United States, including Illinois consumers. *Id.* ¶ 5. Plaintiff did not authorize the use of its Bar & Shield Logo on the axle nut covers that Defendant sold. *Id.* Plaintiff also did not authorize Defendant to use the Bar & Shield Logo in connection with any other products in Defendant's eBay store. *Id.* ¶ 4.

**II. Legal Standard**

Courts should grant summary judgment when the moving party shows that no genuine dispute exists as to any material fact and the evidence weighs so heavily in the moving party's favor that the moving party "must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *see also* Fed. R. Civ. P. 56. A genuine dispute as to a material fact exists when, based upon the evidence, a reasonable jury could find for the non-moving party. *Anderson*, 477 U.S. at 248. To show a genuine dispute as to a material fact, the non-moving party must point to

3

"particular materials in the record," and cannot rely upon the pleadings or speculation. *Olendzki v. Rossi*, 765 F.3d 742, 746 (7th Cir. 2014).

Courts must evaluate evidence in the light most favorable to the non-moving party and must refrain from making credibility determinations or weighing evidence. *Rasho v. Elyea*, 856 F.3d 469, 477 (7th Cir. 2017) (citing *Anderson*, 477 U.S. at 255). The moving party bears the burden of establishing the lack of genuine disputes as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## III. Analysis

### A. Plaintiff's Motion for Summary Judgment

Plaintiff asserts three claims against Defendant: federal trademark infringement and counterfeiting under the Lanham Act (Count I); false designation of origin under the Lanham Act (Count II); and violation of the Illinois Uniform Deceptive Trade Practices Act (UDTPA) (Count III). Each claim requires Plaintiff to make the same showing: (1) it has a protectable mark; and (2) Defendant's unauthorized use of the mark would likely cause confusion among consumers. *See Phx. Entm't Partners v. Rumsey*, 829 F.3d 817, 822 (7th Cir. 2016); *Monster Energy Co. v. Jing*, No. 15-cv-277, 2015 WL 4081288, at *2 (N.D. Ill. July 6, 2015) (explaining that the same analysis applies to UDTPA and Lanham Act claims). Defendant's argument that Plaintiff's motion fails as to Counts II and III because Plaintiff "provides legal analyses only as to Count I" demonstrates a serious misunderstanding of the applicable law. [115] at 3.

Turning to the merits, Plaintiff has a protectable mark. The Bar & Shield

4

Logo registration has incontestable status under 15 U.S.C. § 1065. [101] ¶ 1. Registering a trademark provides prima facie evidence of a mark's validity and the registrant's exclusive right to use that mark. *See CAE, Inc. v. Clean Eng'g, Inc.*, 267 F.3d 660, 673 (7th Cir. 2001) (citing 15 U.S.C. § 1115(a)). When a mark obtains incontestable status, the registration then provides "conclusive evidence" of the mark's validity and the registrant's exclusive right to use that mark. 15 U.S.C. § 1115(b). Thus, Plaintiff meets its burden of showing that it has a protectable mark.

As for unauthorized use, Plaintiff's evidence shows that it never authorized Defendant to use the Bar & Shield Logo in connection with any products. [101] ¶¶ 4–5. Yet Defendant sold and offered for sale into the United States "knockoff products" featuring marks "substantially indistinguishable from" Plaintiff's mark. *Monster*, 2015 WL 4081288, at *2.

Finally, Plaintiff also shows that Defendant's unauthorized use of the Bar & Shield Logo would likely cause consumer confusion. The Seventh Circuit held in an unpublished opinion that producing "counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product" creates a "presumption of a likelihood of confusion." *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007) (internal quotation marks omitted). Following *Microsoft*, this Court can presume a likelihood of confusion arising from Defendant's use of a counterfeit Bar & Shield Logo. *See Monster*, 2015 WL 4081288, at *2 (citing *Microsoft*, 249 F. App'x at 479).

Even if this Court could not presume a likelihood of confusion, this Court

would still find a likelihood of confusion based upon Plaintiff's evidence. Although whether a likelihood of confusion exists presents a factual question, a district court may resolve that question on summary judgment if the evidence favors one side so heavily that the court has no doubt about how to answer the question. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008) (internal quotation marks omitted). This case falls within the doubt-free zone.

The Seventh Circuit follows a seven-factor test for assessing likelihood of confusion: (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care that consumers will likely exercise; (5) the strength of the protected mark; (6) actual confusion, if any; and (7) the defendant's intent to "palm off" his product as another's product. *Id.* The similarity of the marks, the defendant's intent, and actual confusion (if any) tend to carry the most weight, but no one factor determines the outcome. *Id.* This Court reviews each factor in turn.

First, like the plaintiff in *Monster*, Plaintiff submitted images of Defendant's counterfeit goods; the images show a mark "so nearly identical" to the Bar & Shield Logo that viewers would likely associate Defendant's axle nut covers with Plaintiff's axle nut covers. *Monster*, 2015 WL 4081288, at *2. Second, the products—axle nut covers—"are the kind the public might very well attribute to a single source (the plaintiff)." *AutoZone,* 543 F.3d at 931 (quoting *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 463 (7th Cir. 2000)). Plaintiff and Defendant both offer axle nut covers compatible with Harley-Davidson motorcycles, and Plaintiff authorizes *some*

6

retailers to sell products bearing its mark. Thus, consumers could easily believe that the marks on Defendant's counterfeit goods originated with Plaintiff. *See Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 899 (7th Cir. 2001). No genuine issue of fact exists as to the first and second factors.

On the third factor, Plaintiff offers almost no evidence other than that it distributes products with the genuine Bar & Shield Logo throughout the United States and that Defendant offers its counterfeit axle nut covers to the same market. *See generally* [102]. So, Plaintiff gets only minimal support from this factor, but regardless, no genuine issue of material fact exists as to the area and manner of concurrent use. *See Monster*, 2015 WL 4081288, at *3.

Fourth, courts assume that consumers "exercise a lesser degree of care and discrimination" when purchasing widely accessible and inexpensive products. *Sorensen v. WD-40 Co.*, 792 F.3d 712, 730 (7th Cir. 2015). A lesser degree of consumer care supports a finding that a likelihood of confusion exists. *Id.* Defendant sold its axle nut covers bearing the counterfeit mark for about $12 per pair. [116] at 5. Although Plaintiff's genuine axle nut covers cost more than the counterfeit items, *id.*, the genuine products still retail for a relatively low price, especially compared to the cost of a motorcycle that the products would accessorize. Thus, consumers likely would not exercise a tremendous deal of care in purchasing axle nut covers, so this factor favors Plaintiff. Defendant offers no evidence to contradict this finding, other than the improper legal argument that this Court previously disregarded for violating Local Rule 56.1.

7

Fifth, Plaintiff has a strong mark. The strength factor refers to a mark's distinctiveness, or its "propensity to identify the products or services sold as emanating from a particular source." *CAE*, 267 F.3d at 684. Courts often measure this factor through a mark's "economic and marketing strength." *AutoZone*, 543 F.3d at 933. In *AutoZone*, for example, the court found a strong mark where the plaintiff displayed its mark prominently on thousands of stores across the country and used the mark in hundreds of millions of dollars' worth of advertising over several decades. *Id.* Similarly, Plaintiff here began using the Bar & Shield Logo around 1910, and now spends millions of dollars yearly on advertising that includes the Bar & Shield Logo. [102] ¶¶ 4, 8. Defendant offers no contradicting evidence, so this factor wholly supports Plaintiff.

As for the sixth factor, Plaintiff offers no evidence of actual confusion. But Plaintiff does not have to show actual confusion to demonstrate a likelihood of confusion, *CAE*, 267 F.3d at 685–86, so this factor does not affect the analysis here, *see Monster*, 2015 WL 4081288, at *3.

Seventh, Defendant's "use of identical marks on nearly identically-designed products" shows that Defendant "intended to confuse and deceive consumers into believing" that Defendant offers axle nut covers affiliated with or made by Plaintiff. *Id.* Defendant protests to the contrary, but through an undated, conclusory declaration that this Court already disregarded. This Court may infer Defendant's intent to confuse consumers "from the similarity of the marks where the senior mark has attained great notoriety." *AutoZone*, 543 F.3d at 934. Plaintiff has used

8

the Bar & Shield Logo since the early 1900s and now owns one of the most valuable brands in the world. [102] ¶ 12. Given the similarity of the marks and products at issue here and the notoriety of Plaintiff's mark, the evidence shows that Defendant intended to "palm off" his product as Plaintiff's. *AutoZone*, 543 F.3d at 929.

Overall, the evidence favors Plaintiff so heavily that this Court has no doubt that Defendant's unauthorized use of the Bar & Shield Logo creates a likelihood of confusion. This Court grants summary judgment to Plaintiff on all counts.

### 1. **Statutory Damages**

For Defendant's infringement, Plaintiff seeks at least $150,000 in statutory damages under 15 U.S.C. § 1117(c). The Lanham Act ordinarily allows up to $200,000 in statutory damages per counterfeit mark, although a plaintiff may recover up to $2,000,000 per counterfeit mark for willful infringement. § 1117(c)(1), (c)(2). Courts enjoy "wide discretion" in awarding statutory damages and should consider various factors to set awards, such as "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent" to future infringement. *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229 (7th Cir. 1991). Courts also consider the value of the plaintiff's brand and efforts to protect the brand. *Lorillard Tobacco Co. v. S & M Cent. Serv. Corp.*, No. 03-cv-4986, 2004 WL 2534378, at *6 (N.D. Ill. Nov. 8, 2004).

Plaintiff argues that Defendant willfully infringed the Bar & Shield Logo. This Court agrees. Infringement qualifies as willful when the infringer knows that its conduct constitutes infringement or acts "in reckless disregard" of the owner's

rights. *Wildlife Exp. Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 511 (7th Cir. 1994). To find knowing infringement, "willful blindness" constitutes "knowledge enough." *Louis Vuitton S.A. v. Lee*, 875 F.3d 584, 590 (7th Cir. 1989). As this Court found above, Defendant intended to pass off his product as Plaintiff's. Because products featuring the Bar & Shield Logo "are widely recognized and associated exclusively with" Plaintiff, and because Defendant used a mark "virtually identical" to Plaintiff's mark, this Court finds that Defendant willfully infringed the Bar & Shield Logo. *Monster*, 2015 WL 4081288, at *3. That finding of willfulness means that Plaintiff may recover up to $2,000,000 under § 1117(c)(2).

The inquiry now turns to *Chi-Boy's* discretionary factors for awarding statutory damages. Defendant argues that this Court should award less than $150,000 because Plaintiff did not calculate its actual damages or "provide nexus [sic] between the violation and its actual damages." [115] at 4. Again, Defendant's argument demonstrates a misunderstanding of the applicable law. Plaintiff's actual damages "do not ultimately matter" because Plaintiff "elected to pursue statutory damages under § 1117(c)" instead of actual damages under § 1117(b). *Luxottica Grp. S.p.A. v. Chen*, No. 16-cv-6850, 2017 WL 836228, at *3 (N.D. Ill. Mar. 2, 2017). Indeed, Congress allowed statutory damages as a remedy in part because "actual damages may be difficult, if not impossible, to determine" in many counterfeiting schemes involving online retailers. *Lorillard*, 2004 WL 2534378, at *6. Defendant's argument carries little weight here.

This Court must craft an award that will deter both Defendant and other

potential future violators. *Id.* An award limited to Plaintiff's lost profits "would have little to no deterrent effect on future violations," because a counterfeiter must "understand that he risks his financial future by engaging in his illegal practice." *Id.* And the fact that Defendant's counterfeiting took place online favors a higher statutory damages award because online counterfeiting can reach a much wider audience than counterfeiting through a physical store. *Luxottica USA LLC v. The P'ships*, No. 14-cv-9061, 2015 WL 3818622, at *2 (N.D. Ill. June 18, 2015). Plaintiff's request for a $150,000 award gains more traction from the high value of Plaintiff's brand and the efforts (such as this litigation) that Plaintiff undertakes to protect that brand. *See* [102] ¶ 12 (independent branding firm ranked Plaintiff's brand as one of the 100 most valuable in the world in 2015). Taking Defendant's willful infringement and the other factors discussed here into consideration, this Court awards $150,000 in statutory damages to Plaintiff. *See The P'ships*, 2015 WL 3818622, at *3 (collecting cases with similar awards).

### 2. Permanent Injunction

Plaintiff also seeks a permanent injunction barring Defendant from advertising, offering for sale, and selling counterfeit Harley-Davidson products. A plaintiff seeking a permanent injunction must show that: (1) it has suffered an irreparable injury; (2) legal remedies, such as monetary damages, cannot adequately compensate for that injury; (3) the balance of hardships between the parties warrants an equitable remedy; and (4) a permanent injunction would not

harm the public interest. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Plaintiff easily satisfies that test here.

For the first and second factors, the damage that trademark holders suffer from counterfeit goods constitutes "irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001). The balance of hardships also favors Plaintiff; Defendant has no legitimate interest in selling goods bearing Plaintiff's counterfeit mark, but Plaintiff's goodwill would suffer if Defendant continued selling its counterfeit goods. *See Bulgari, S.P.A. v. Xiaohong*, No. 15-cv-5148, 2015 WL 6083202, at *3 (N.D. Ill. Oct. 15, 2015). Finally, a permanent injunction would serve the public interest by removing counterfeit goods from the marketplace and reducing consumer confusion. *Id.*; *see also Eli Lilly*, 233 F.3d at 469. Accordingly, this Court grants Plaintiff's request for a permanent injunction.

### 3. Attorney Fees and Costs

Plaintiff seeks an award of reasonable attorney fees under § 1117(b), and costs. Absent "extenuating circumstances," courts "shall" award reasonable attorney fees in cases involving intentional infringement. § 1117(b); *see also BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081, 1099 (7th Cir. 1994). Federal Rule of Civil Procedure 54(d)(1) entitles Plaintiff, as the prevailing party, to its costs other than attorney fees. Thus, this Court awards Plaintiff reasonable attorney fees and costs. The parties must follow Local Rule 54.3 to allow this Court to determine the amount of fees and costs it should award.

### B. Defendant's Motion to Lift the November 2016 Asset Freeze

Defendant moved to modify the preliminary injunction freezing its PayPal account that this Court entered in November 2016. [111]. Defendant bears the burden of presenting "documentary proof that particular assets are not the proceeds of counterfeiting activities." *The P'ships*, 2015 WL 3818622, at *5 (quoting *N. Face Apparel Corp. v. TC Fashions, Inc.*, No. 05 Civ. 9083 (RMB), 2006 WL 838993, at *3 (S.D.N.Y. Mar. 30, 2006)). Defendant fails to meet that burden.

Instead of documentary proof, Defendant offers another undated declaration from bg27cyf's manager. [111-1]. The declaration states: "None of the $165,000 currently on deposit in bg27cyf's Pay Pal [sic] account is derived from the sale of products in the United States bearing the Harley-Davidson trademark or logo." *Id.* ¶ 5. Setting aside the evidentiary issues arising from an undated declaration, such a conclusory statement plainly does not qualify as documentary proof that Defendant's PayPal account contains no proceeds from its counterfeiting activities. In fact, Plaintiff submitted PayPal transaction logs for bg27cyf showing over 24,000 transactions for products featuring "Harley" in the name. [141]. Given that evidence, and Defendant's lack of documentary proof that its account contains legitimate funds, this Court denies Defendant's motion to modify the preliminary injunction and lift the asset freeze on its PayPal account.

### C. Plaintiff's Motion to Compel Discovery and/or Strike Defendant's Motion to Lift the Asset Freeze

Plaintiff moved to compel Defendant to produce certain information allegedly

necessary for Plaintiff to respond to Defendant's motion to lift the asset freeze. [132]. Alternatively, Plaintiff moved to strike Defendant's motion to lift the asset freeze. *Id.* Because this Court denied Defendant's motion to lift the asset freeze, this Court denies Plaintiff's motion to compel and/or strike as moot.

### D. Defendant's Motion to Strike

Defendant moved to strike a declaration that Plaintiff filed with its reply brief supporting summary judgment. [143]. This Court did not rely upon that declaration in granting summary judgment to Plaintiff or in ruling on the other motions at issue, so this Court denies Defendant's motion to strike as moot.

## IV. Conclusion

This Court grants Plaintiff's motion for summary judgment [99] and awards Plaintiff $150,000 in statutory damages, enters a permanent injunction barring Defendant from selling and offering for sale counterfeit Harley-Davidson products, and awards Plaintiff its reasonable attorney fees and costs. This Court denies Defendant's motion to lift the November 2016 asset freeze [111]. This Court denies both Plaintiff's motion to compel and/or strike [132] and Defendant's motion to strike [143] as moot.

Dated: December 18, 2017

Entered:

John Robert Blakey
United States District Judge